Charles T. DOUDS, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

SEAFARERS' INTERNATIONAL UNION OF NORTH AMERICA, ATLANTIC and GULF DISTRICT, AFL-CIO; International Association of Masters, Mates & Pilots, Inc., AFL-CIO; and National Marine Engineers Beneficial Association, AFL-CIO, individually and as agents for each other, Respondents.

Civ. No. 17269.

United States District Court
E. D. New York.

Feb. 26, 1957.

William W. Kapell, Washington, D. C., Samuel M. Kaynard, New York City, for petitioner.

Seymour W. Miller, Brooklyn, N. Y., William Feldesman and Israel G. Seeger, Brooklyn, N. Y., of counsel, for respondent Seafarers' International Union of North America.

Marvin Schwartz, New York City, Betty H. Olchin, New York City, of counsel, for respondent International Ass'n of Masters, Mates & Pilots, Inc.

Lee Pressman, New York City, Edward J. Malament, New York City, of counsel, for respondent National Marine Engineers Beneficial Ass'n.

BRUCHHAUSEN, District Judge.

The Nature of This Proceeding.

The Government, through its agency, National Labor Relations Board, has petitioned this Court to prevent the three respondent associations from continuing a secondary boycott at the shipyard of the Monti Marine Corporation. The

respondents are hereinafter termed, "The Seafarers", "The Pilots" and "The Engineers".

The Congress by the National Labor Relations Act proclaimed that neither employers, employees or labor organizations shall "engage in acts or practices which jeopardize the public health, safety or interest."

It is conceded that on or about January 14, 1957, Monti Marine Corporation, pursuant to the said Act, filed with the said Board a charge that the three respondents engaged in unfair labor practices within the meaning of Section 8(b)(4)(A) of the Act, 29 U.S.C.A. § 158(b)(4)(A), the section prohibiting secondary boycotting, also that the charge was investigated by the Regional Director of the said Board.

The respondents, admittedly, have no grievance against Monti Marine Corporation. Their dispute is with American Coal Shipping, Inc., a company having an interest in the S. S. Paine, a ship towed to the Monti Shipyard on December 29, 1956, for reactivation. The ship was under the control of the Maritime Administration, which had contracted with Monti to recondition and repair it.

### The Substance of the Complaint, Charging Secondary Boycotting.

Monti, the employer of several hundred persons, under the aforementioned circumstances, was not lawfully subject to picketing. The Government's charge of secondary boycotting, in substance, is that the three organizations picketed Monti so as to force it to cease doing business with the Maritime Administration and to force or require Maritime Administration to cease doing business with American Coal Shipping, Inc. and to force or require subcontractors and other employers doing business with Monti to cease doing business with it.

The respondents do not deny that the statute prohibits such secondary boycotting. Their principal defenses are of a technical nature and are later evaluated.

It must be borne in mind that the Statute, Section 10(l) of the Act, 29 U.S.C.A. § 160(l), does not empower this Court to adjudicate the issues. That function is assigned to the Board, before which the case is still pending. The petitioner is entitled to the relief it seeks upon a finding that there is reasonable cause to believe that the charges made are true.

### The Evidence Establishes that the Respondents Engaged in a Secondary Boycott.

It is undisputed that the picketing by the respondents resulted in a complete cessation of work by all of the hundreds of employees at the yard and that activities were not resumed until the S. S. Paine was towed elsewhere, some weeks later. The respondents' claim that they limited their picketing to the employees of the S. S. Paine and refrained from picketing the entire Monti plant is not supported by the evidence. The Government produced a number of witnesses on this point. The witness, Adolph Kruger, a shop steward of Local 1972 of the Machinists Union, and a Monti employer, testified that he was urged to respect the picket line. The witness, Charles Montanti testified that Mr. Bernstein, who apparently had charge of pickets on December 31, 1956, informed him that no one would be permitted to cross the picket line and enter the yard. The witness, George Jorgensen, corroborated this testimony. Both of them mentioned that the pickets were stationed outside of the main gate to the yard. The witness, Michael Montiori, a guard at the shipyard, stated that there were thirty or more pickets near the gate and that they instructed employees of Monti and others not to work, but to observe the picket line. The witness, Ralph Perrotta, employed by Monti, was warned not to pass the picket line, despite his assertion that he was not employed on the S. S. Paine. The witness, Vito Colletto, a supervisor and estimator for Monti, testified to the same effect.

None of the respondents' witnesses gave evidence to the contrary or, in fact, did they allude in any way to the picketing activities at the Monti yard, excepting that the witness Osborne Rowell, in charge of the pickets for one of the respondents, on cross-examination stated that his men spoke to a large number of Monti employees.

■ These actions of the respondents constitute a secondary boycott, not within the "common situs" exceptions of the Moore Dry Dock case, 92 N.L.R.B. No. 93, as approved by this Circuit in National Labor Relations Board v. Service Trade Chauffeurs, etc., 2 Cir., 191 F.2d 65. See also Douds v. International Brotherhood of Teamsters, etc., D.C.S. D.N.Y., 139 F.Supp. 702.

The Principal Defense of the Respondents, "The Pilots" and "The Engineers", Is That Their Members Are Employed in Supervisory Capacities and Are Not Included in the Act.

The said respondents deny that they are "labor organizations" within the meaning of Section 2(5) of the Act, 29 U.S.C.A. § 152(5), and hence are not prohibited from engaging in secondary boycotts on the authority of Di Giorgio Fruit Corp. v. National Labor Relations Board, 89 U.S.App.D.C. 155, 191 F.2d 642, 28 A.L.R.2d 377, certiorari denied 342 U.S. 869, 72 S.Ct. 110, 96 L.Ed. 653. In that case, however, it was not disputed that the subject organization was composed of agricultural workers, excluded under the Act.

While the said respondents contend that their associations are composed of supervisors (likewise excluded under the Act), and that they are not employees, as defined in Section 2, the positions taken by them in the past raise a presumption to the contrary, at least as far as this application is concerned.

It appears that in various prior proceedings in the Courts and before the Board, both of the said respondents have taken positions, constituting admissions that they regard themselves as labor organizations within the meaning of the Act.

In the Matter of J. W. Banta Towing Company, Inc. before the 14th Region of the Board, Case No. 14–CB–291, both respondents in verified answers filed by their attorney admitted allegations that they were labor organizations within the meaning of the Act. While they were respondents therein they also filed charges of unfair labor practices with the Board's General Counsel. It was shown that both respondents formed a committee for the organization of employees engaged in inland water transportation and that one Martzlufft was sent on behalf of "The Engineers" to organize the crew aboard the subject vessel.

In the Wilson Transit Company matter before the Board, 80 N.L.R.B. 1477, the respondent, "The Pilots" attempted to establish its association was composed of non-supervisory professional pilots, occasionally acting as straw bosses. This occurred after the Act had been amended, providing for the exclusion of supervisors. It was therein stipulated that, for the purposes of the record, the duties and responsibilities of the mates involved were the same as those mentioned in National Labor Relations Board v. Wyandotte Transportation Co., 6 Cir., 162 F.2d 101 (62 N.L.R.B. 1518; 65 N.L.R.B. 930), in which the said respondent also sought relief as a labor organization.

In Marine Engineers Beneficial Association v. National Labor Relations Board, 3 Cir., 202 F.2d 546, the respondent, "The Engineers" petitioned the Board and Court in the capacity of a labor organization.

The said respondents filed non-Communist affidavits with the Board, so as to further benefit by the Act.

■ Prior pleadings may constitute competent admissions, even though made in another proceeding, White v. Mechanics Securities Corp., 269 U.S. 283, 46 S.Ct. 116, 70 L.Ed. 275; or when made by an attorney, Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc., 2 Cir., 32 F.2d 195; or though made

before an administrative body, Borel v. United States Casualty Co., 5 Cir., 233 F.2d 385; or though they have been superceded, or though different parties are involved. Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc., supra.

■ Prior testimony in another proceeding is valid evidence as an admission. Coggey v. Bird, 2 Cir., 209 F. 803; Northeastern Real Estate Securities Corp. v. Goldstein, 2 Cir., 163 F.2d 963.

Prior stipulations and agreed statements are admissible in this respect. Andrews v. Hotel Sherman, 7 Cir., 138 F.2d 524; so are prior actions, Mutual Life Insurance Co. of New York v. Frost, 1 Cir., 164 F.2d 542.

■ Explanations of the foregoing admissions relate to weight rather than admissibility. Pope v. Allis, 115 U.S. 363, 68 S.Ct. 69, 29 L.Ed. 393.

■ While it is true that there were varying circumstances in those matters, such as the involvement of river traffic and tug boats, the respondent, "The Pilots", has nowhere contradicted its earlier contention that at least the pilots within its association do not supervise. The respondent, "The Engineers" has failed to introduce testimony of instances of supervision by its members, but bases its claim on the assertion that an engineer must have a license. There has been no showing that all licensed personnel must act as supervisors. A determination thereof seems to depend upon the actual duties performed. On the other hand, the respondent, "The Pilots" contends that a person may be a supervisor though unlicensed. A license, per se, does not necessarily constitute one a supervisor.

For the Purposes of This Application There Is Reasonable Cause to Believe that the Said Respondents Are Labor Organizations Within the Act.

In some of the prior proceedings the Board has held that respondents are not labor organizations within the Act.

Whether or not the respondents are in that category is a legal conclusion. By their prior admissions, however, the respondents have admitted the facts upon which their said legal positions must consistently have been based. People's Natural Gas Co. v. Federal Power Commission, 75 U.S.App.D.C. 235, 127 F.2d 153, certiorari denied 316 U.S. 700, 62 S.Ct. 1298, 86 L.Ed. 1769; Southern Railway Co. v. Mayes, 4 Cir., 113 F. 84, certiorari denied 186 U.S. 483, 22 S.Ct. 942, 46 L.Ed. 1260; Mutual Life Insurance Co. of New York v. Frost, supra; Borel v. United States Casualty Co., supra.

On the other hand, the Board's prior findings are also legal conclusions. Yet the respondents have not indicated what facts those conclusions were based upon, or why the facts found in the one case should be accepted, and, in the other, rejected.

If the facts found were identical, then the conclusion of law must be upheld if correct and rejected if false. But for the purposes of this proceeding, respondents' prior admissions are evidence of the fact that they are labor organizations within the Act.

The Respondents as a Further Defense Urge that the Maritime Administration Being an Agency of the Government, Is Not an Employer as Defined in Section 2(2) of the Act and, Therefore, Is Not Affected by Sections 8(b)(4) and 8(b)(4)(A), Governing or Concerning an "employer or other person."

■ This Court holds that the Maritime Administration is included in the terms of "any employer" and "other person", as set forth in Section 8(b)(4) and 8(b)(4)(A) of the Act. Local Union No. 25 of Intern. Teamsters Union v. N. Y., N. H. & H. R. R. Co., 350 U.S. 155, 76 S.Ct. 227, 100 L.Ed. 166; International Rice Milling Co. v. N. L. R. B., 5 Cir., 183 F.2d 21. See also dissenting opinion in the Matter of Paper Makers Importing Co. Inc., Case No. 13–CC–110, 116 N.L.R.B. No. 37.

Furthermore, a paraphrasing of the said sections demonstrates that the defense is without merit, viz.:

Sec. 8(b) It is an unfair labor practice for "The Pilots" and "The Engineers" (Sec. 8(b) (4)) to induce the employees of Monti to engage in a strike, with the object of (Sec. 8(b) (4) (A)) forcing any employer or other person (Monti) to cease doing business with any other person (Maritime Administration). and forcing or requiring Maritime Administration to cease doing business with American Coal Shipping, Inc.

■ Under all of the circumstances, there is reasonable cause to believe that the charges are true and a complaint should issue.

The motion is, in all respects, granted.