In the Matter of the Estate of CHARLES A. WEBER, Deceased.

Surrogate's Court, Erie County, August 23, 1938.

*Garono, Jaeckle & Kelly* [*Charles J. Wick* of counsel], for Magdalene Snabon, as executrix.

*Clifford C. Slaght,* for Frank Sombrio, claimant.

HART, S. The claimant is the second husband of Elizabeth Sombrio. The deceased was the first husband, from whom she was divorced on August 5, 1930. The decedent was the plaintiff in that action and his former wife was defendant. By the terms of the decree of divorce the care and custody of the children were given to him. In 1932, while the decedent was in the hospital, Mrs. Sombrio assumed the care and custody of the children. This arrangement continued up to the death of the deceased. Mrs. Sombrio married her present husband shortly after the final decree of divorce was granted. He has presented a claim against the estate in the amount of $2,232 for the support and maintenance of the three infant children. Further facts will be related later on in this opinion.

At the outset this court is faced with the rule in the cases of *Laumeier* v. *Laumeier* (237 N. Y. 356) and *De Brauwere* v. *De Brauwere* (203 id. 460). Briefly that rule is: " ' A parent is under a natural obligation to furnish necessaries for his infant children; and if the parent neglect that duty, any other person who supplies such necessaries is deemed to have conferred a benefit on the delinquent parent, for which the law raises an implied promise to pay on the part of the parent.' "

It was further stated in this opinion " that a husband is liable in equity to one who furnishes necessaries requisite for the support of his deserted wife and infant children or to one who furnishes the wife with money with which to procure such necessaries." (See *De Brauwere* v. *De Brauwere*, 203 N. Y. 460, 463.)

Does the present matter come within the law of these cases?

As stated before, the husband and wife were divorced in 1930 and the care and custody of the children given to the husband, thus clearly fastening upon him the duty of their care and support. He responded to this duty until illness and lack of employment changed his situation. The children lived with him at No. 180 Kehr street, Buffalo, N. Y., which premises were formerly owned as joint tenants by himself and his former wife, and which by reason of the divorce belonged to them as tenants in common. It appears from the evidence that the mother and former wife went, as she states, " crying to the father on several occasions that there was nobody to take care of the children," and that finally while in the hospital he stated: " Well, Al, [meaning Mrs. Sombrio]

the best thing you better do is to come back there [meaning his home] and take care of them. I don't know whether I will ever get out of here again, but if I do I will take care of the kids." She returned to the home at No. 180 Kehr street with her second husband, the claimant, and her children. Mr. Weber never regained his health and was able to work but little until the time of his death.

I think the situation in this case is different from the facts in the above-mentioned cases. The rule of law laid down is predicated upon two principles: one, neglect of the parent who is under the natural obligation to furnish necessaries, and the other, liability in equity of the husband. In invoking the latter principle it would appear to me that this court must view the entire situation from an equitable standpoint and make its deductions accordingly.

It cannot truthfully be stated that the husband neglected his duty. He complied with it as long as he was able and to raise these children without the help of the mother was no mean task. When the father became helpless it was the duty of the mother, despite the divorce and the awarding of the custody of the children to the father, to support and care for these children and to this duty she loyally and readily responded.

When Mr. Sombrio married Mrs. Weber he undoubtedly knew that there were three children by her former marriage and that she was divorced from her first husband. The possibility that at sometime his wife might be called upon or might deem it her duty to care and support these children was the chance he took in marrying Mrs. Weber. The evidence does not disclose that he made any objection to the arrangement and he in fact moved into the home owned by the former husband and wife as tenants in common. It is to his credit that he aided in supporting and caring for his wife's children, but it was a voluntary act brought about by his marriage to Mrs. Weber and the unfortunate plight of her former husband. If Mrs. Weber had not been married at the time this crucial situation arose, the duty and responsibility would have been the same, and that duty and responsibility could not be and was not converted into a legal obligation upon the part of her former husband's estate to pay her present husband.

The claim of Frank Sombrio is, therefore, disallowed.